BLACK & LOBELLO
S. Don Bennion, Esq.
Nevada Bar No. 4530
YanXiong Li, Esq.
Nevada Bar No. 12807
10777 W. Twain Ave
Third Floor
Las Vegas, Nevada 89135
Telephone (702) 869-8801
Facsimile (702) 869-2669
dbennion@blacklobellolaw.com
mli@blacklobellolaw.com
Attorneys for Debtor,
ARA Nevada LLC

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF NEVADA

In re:

ARA NEVADA LLC,

Debtor.

Case No. BK-S-13-19693-LED
Chapter 11

**CERTIFICATE OF SERVICE OF SUPPLEMENTAL BRIEF IN SUPPORT OF DEBTOR'S OPPOSITION TO MOTION TO COMPEL ASSUMPTION OR REJECTION OF LICENSE AGREEMENT AS AN EXECTORY CONTRACT UNDER 11 U.S.C. §365(D)(2) AND SUPLEMENTAL DECLARATION OF CHRISTOPHER BENTLEY IN SUPPORT OF SUPPLEMENTAL BRIEF IN SUPPORT OF DEBTOR'S OPPOSITION TO MOTION TO COMPEL ASSUMPTION OR REJECTION OF LICENSE AGREEMENT AS AN EXECTORY CONTRACT UNDER 11 U.S.C. §365(D)(2)**

On April 7, 2014, I served the SUPPLEMENTAL BRIEF IN SUPPORT OF DEBTOR'S OPPOSITION TO MOTION TO COMPEL ASSUMPTION OR REJECTION OF LICENSE AGREEMENT AS AN EXECTORY CONTRACT UNDER 11 U.S.C. §365(D)(2) AND SUPLEMENTAL DECLARATION OF CHRISTOPHER BENTLEY IN SUPPORT OF SUPPLEMENTAL BRIEF IN SUPPORT OF DEBTOR'S OPPOSITION TO MOTION TO COMPEL ASSUMPTION OR REJECTION OF LICENSE AGREEMENT AS AN EXECTORY CONTRACT UNDER 11 U.S.C. §365(D)(2).

1. I served the above-named document by the following means to the persons listed below:

    [ X ]    a.    ECF System. See Notice of Electronic Filing attached hereto.

    [ X ]    b.    United States mail, postage fully prepaid: See attachment 1.

    [ ]    c.    Personal Service:

I personally delivered the document(s) to the persons at these addresses:

[ ] For a party represented by an attorney, delivery as made by handing the document to the attorney or by leaving the document at the attorney's office with a clerk or other person in charge, or if no one is in charge by leaving the documents in a conspicuous place in the office.

[ ] For a party, delivery was made by handing the document to the party or by leaving the document at the person's dwelling house or usual place of abode with someone of suitable age and discretion residing there.

[ ]  d.  By direct e-mail.
Based upon the written agreement of the parties to accept service by email or a court order, I caused the document to be sent to the persons at the email addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

[ ]  e.  By fax transmission.
Based upon the written agreement of the parties to accept service by fax transmission or a court order, I faxed the document to the persons at the fax numbers listed below. No error was reported by the fax machine that I used. A copy of the record of the fax transmission is attached.

[ ]  f.  By messenger.
I served the document by placing them in an envelope or package addressed to the persons listed below and providing them to a messenger for service.

I declare under penalty of perjury that the foregoing is true and correct.

Signed on: *April 8, 2014*

*Jerri Hunsaker*
Name

*Jerri Hunsaker*
Signature

ATTACHMENT 1

Clark County Treasurer
c/o Bankruptcy Clerk
500 S. Grand Central
Box 5512220
Las Vegas, NV  89155-1220

Department of Employment, Training & Rehab
Employment Security Division
500 East Third Street
Carson City, NV  89713

Internal Revenue Service
PO Box 7346
Philadelphia, PA  19101-7346

BLACK & LOBELLO
10777 W. Twain Avenue, 3rd Floor
Las Vegas, Nevada 89135
(702) 869-8801  FAX: (702) 869-2669

Label Matrix for local noticing
0978-2
Case 13-19693-led
District of Nevada
Las Vegas
Tue Apr 8 08:34:27 PDT 2014

United States Bankruptcy Court
300 Las Vegas Blvd., South
Las Vegas, NV 89101-5833

APARTMENT REALTY ADVISORS, INC.
COTTON DRIGGS WALCH
OGONNA M. ATAMOH, ESQ.
400 SO. 4TH STREET
THIRD FLOOR
LAS VEGAS, NV 89101-6201

Andrew Shih
c/o Jeff Pritchard
14114 Dallas Parkay, Suite 550
Dallas, TX 75254-1335

ARA NEVADA LLC
10620 SOUTHERN HIGHLAND PKWY, #110-
LAS VEGAS, NV 89141-4372

Apartment Realty Advisors, Inc.
Attn: Lisa Robinson
6445 Powers Ferry Road, Suite 300
Atlanta, GA 30339-2953

Brian O'Boyle, Sr.
c/o Jeff Pritchard
14114 Dallas Parkway, Suite 550
Dallas, TX 75254-1335

Chris Bancroft
c/o Jeff Pritchard
14114 Dallas Parkway, Suite 550
Dallas, TX 75254-1335

Chris Epp
c/o Jeff Pritchard
14114 Dallas Parkway, Sie 550
Dallas, TX 75254-4325

Jeff Pritchard
14114 Dallas Parkway, Suite 550
Dallas, TX 75254-1335

Marc Crowther
c/o Jeff Pritchard
14114 Dallas Parkway, Suite 550
Dallas, TX 75254-1335

Marc deBaptiste
c/o Jeff Pritchard
14114 Dallas Parkway, Suite 550
Dallas, TX 75254-1335

Mark Leary
c/o Jeff Pritchard
14114 Dallas Parkway, Suite 550
Dallas, TX 75254-1335

Patton Jones
c/o Jeff Pritchard
14114 Dallas Parkway, Suite 550
Dallas, TX 75254-1335

Richard Donnellan
c/o Jeff Pritchard
14114 Dallas Parkway, Suite 550
Dallas, TX 75254-1335

Todd Fletcher
c/o Jeff Pritchard
14114 Dallas Parkway, Suite 550
Dallas, TX 75254-1335

U.S. TRUSTEE - LV - 11
300 LAS VEGAS BOULEVARD S.
SUITE 4300
LAS VEGAS, NV 89101-5803

ANDRAS F BABERO
10777 W. TWAIN AVE, 3RD FLR
LAS VEGAS, NV 89135-3034

S. DON BENNION
BLACK & LOBELLO
10777 W. TWAIN AVENUE, STE 300
LAS VEGAS, NV 89135-3038

YANXIONG LI
BLACK & LOBELLO
10777 West Twain Avenue
Third Floor
LAS VEGAS, NV 89135-3034

End of Label Matrix
Mailable recipients    19
Bypassed recipients     0
Total                  19

Jerri Hunsaker

From: USBC_NEVADA@nvb.uscourts.gov
Sent: Monday, April 07, 2014 10:10 PM
To: Courtmail@nvb.uscourts.gov
Subject: 13-19693-led Opposition

***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30-page limit do not apply.

U.S. Bankruptcy Court

District of Nevada

Notice of Electronic Filing

The following transaction was received from YANXIONG LI entered on 4/7/2014 at 10:10 PM PDT and filed on 4/7/2014
Case Name:        ARA NEVADA LLC
Case Number:   13-19693-led
Document Number: 46

Docket Text:
Supplemental Opposition *BRIEF IN SUPPORT OF OPPOSITION TO MOTION TO COMPEL ASSUMPTION OR REJECTION OF LICENSE AGREEMENT AS AN EXECUTORY CONTRACT UNDER 11 U.S.C. Â§ 365(d)(2)* Filed by YANXIONG LI on behalf of ARA NEVADA LLC (Related document(s)[36] Brief filed by Debtor ARA NEVADA LLC.) (LI, YANXIONG)

The following document(s) are associated with this transaction:

Document description:Main Document
Original filename:Supp Brf ISO Opp to Mo to Compel - FINAL 4.7.14.pdf
Electronic document Stamp:
[STAMP bkecfStamp_ID=989277954 [Date=4/7/2014] [FileNumber=26199743-0]
[412d559bb6226589b9cc761f43fab3f1bed20bf6a01654aec6d55af4f4848975fb55
21d05671c9f46177c10e6cb002cf4350910d0a716440622a2130b40d1003]]

13-19693-led Notice will be electronically mailed to:

OGONNA M. ATAMOH on behalf of Creditor APARTMENT REALTY ADVISORS, INC.
oatamoh@nevadafirm.com,
rholley@nevadafirm.com;sdwkhtecf@gmail.com;oswibies@nevadafirm.com;apestonit@nevadafirm.com;gbagley@nevadafirm.com

ANDRAS F BABERO on behalf of Debtor ARA NEVADA LLC

1

ababero@blacklobellolaw.com, redtaipan888@hotmail.com

S. DON BENNION on behalf of Debtor ARA NEVADA LLC
dbennion@blacklobellolaw.com

YANXIONG LI on behalf of Debtor ARA NEVADA LLC
mli@blacklobellolaw.com, yanxiongli@hotmail.com

U.S. TRUSTEE - LV - 11
USTPRegion17.lv.ecf@usdoj.gov

**13-19693-led Notice will not be electronically mailed to:**

Jerri Hunsaker

**From:** USBC_NEVADA@nvb.uscourts.gov
**Sent:** Monday, April 07, 2014 10:35 PM
**To:** Courtmail@nvb.uscourts.gov
**Subject:** 13-19693-led Declaration

***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30-page limit do not apply.

U.S. Bankruptcy Court

District of Nevada

Notice of Electronic Filing

The following transaction was received from YANXIONG LI entered on 4/7/2014 at 10:35 PM PDT and filed on 4/7/2014

**Case Name:** ARA NEVADA LLC
**Case Number:** 13-19693-led
**Document Number:** 47

Docket Text:
Supplemental Declaration Of: Christopher Bentley *IN SUPPORT OF SUPPLEMENTAL BRIEF IN SUPPORT OF DEBTORS OPPOSITION TO MOTION TO COMPEL ASSUMPTION OR REJECTION OF LICENSE AGREEMENT AS AN EXECUTORY CONTRACT UNDER 11 U.S.C. § 365(d)(2)* Filed by YANXIONG LI on behalf of ARA NEVADA LLC (Related document(s)[46] Opposition filed by Debtor ARA NEVADA LLC) (LI, YANXIONG)

The following document(s) are associated with this transaction:

Document description: Main Document
Original filename: Declaration of CB ISO Supp Brief ISO OPP to MOT to Compel - FINAL.pdf
Electronic document Stamp:
[STAMP bkecfStamp_ID=989277954 [Date=4/7/2014] [FileNumber=26199749-0]
[99f0e9ad3a4ce52dd4b67413cd462f06aa8a2171c137d80724593d495b6c7235a3f1
9e750f2d16cdf49ef880122d318e7e490e488321295fe8f1d2cb38480c96]]

13-19693-led Notice will be electronically mailed to:

OGONNA M. ATAMOH on behalf of Creditor APARTMENT REALTY ADVISORS, INC.
oatamoh@nevadafirm.com,
rholley@nevadafirm.com;sdwkhtecf@gmail.com;oswibies@nevadafirm.com;apestonit@nevadafirm.com;gbagley@nevadafirm.com

1

ANDRAS F BABERO on behalf of Debtor ARA NEVADA LLC
ababero@blacklobellolaw.com, redtaipan888@hotmail.com

S. DON BENNION on behalf of Debtor ARA NEVADA LLC
dbennion@blacklobellolaw.com

YANXIONG LI on behalf of Debtor ARA NEVADA LLC
mli@blacklobellolaw.com, yanxiongli@hotmail.com

U.S. TRUSTEE - LV - 11
USTPRegion17.lv.ecf@usdoj.gov

**13-19693-led Notice will not be electronically mailed to:**

| | |
|---|---|
| BLACK & LOBELLO<br>TISHA R. BLACK, ESQ.<br>Nevada State Bar No.: 05876<br>S. DON BENNION, ESQ.<br>Nevada State Bar No.: 04530<br>YANXIONG LI, ESQ.<br>Nevada State Bar No.: 04530<br>10777 West Twain Avenue, Third Floor<br>Las Vegas, Nevada 89135<br>Telephone: (702) 869-8801<br>Facsimile: (702) 869-2669<br>tblack@blacklobellolaw.com<br>dbennion@blacklobellolaw.com<br>mli@blacklobellolaw.com | E-FILED APRIL 7th, 2014 |

[Proposed] Attorneys for Debtor/Debtor-in-Possession,
ARA Nevada LLC

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In Re:<br><br>ARA Nevada, LLC, a Nevada limited liability company,<br><br>Debtor. | Case No.: 13-19693-led<br>Chapter 11<br><br>Hearing Date: April 8, 2014<br>Hearing Time: 10:30 AM |

**SUPPLEMENTAL BRIEF IN SUPPORT OF
DEBTOR'S OPPOSITION TO MOTION TO COMPEL
ASSUMPTION OR REJECTION OF LICENSE AGREEMENT
AS AN EXECUTORY CONTRACT UNDER 11 U.S.C. § 365(d)(2)**

Debtor/Debtor-in-Possession, ARA NEVADA, LLC, through its attorneys, the law firm of Black & LoBello hereby files its Supplemental Brief In Support Of Opposition To Motion To Compel Assumption Or Rejection Of License Agreement As An Executory Contract Under 11 U.S.C. § 365(d)(2) ("Supplemental Brief").

This Supplemental Brief is made based upon the following Memorandum of Points and Authorities, the pleadings and papers on file, and any arguments the court chooses to entertain at the time of the above-captioned hearing on this matter.

/ / /

/ / /

Page 1 of 7

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. RELEVANT FACTS AND PROCEDURAL HISTORY[1]

### A. BACKGROUND ARA-NEVADA LLC

1. Over several years, ARA Nevada, LLC ("Debtor" and collectively with its predecessor, the "Company") has established a strong reputation through providing performance-based real estate brokerage services to communities throughout Nevada.

2. Founded on the entrepreneurial spirit and hard work of Christopher and Jodi Bentley, the Company has established an excellent reputation as one of the premier real estate firms in Nevada.

3. Since its inception, the Company has developed a particular focus on the multi-family market. By 2008, after extensive branding efforts and various achievement awards, the Company rapidly expanded from 3 to 15 team members with complete suite of services to meet the demands of an increasing diverse portfolio of clientele, including leased investments, hospitality, industrial and land.

4. In short, the Company enjoyed significant success, with increasing market share year-over-year culminating in approximately $250,358,000 in sales volume for 2007.

### B. THE LICENSE AGREEMENT

5. On July 1, 2010, Apartment Realty Advisors, Inc. ("ARA National") arranged for the Company to obtain a license to use certain intellectual property as part of ARA National's expanding network of promotional and support system for facilitation of real estate transaction ("License Agreement").

6. Under the License Agreement, the Company agreed to tender a one-time initiation fee of $50,000 and annual license fee ("License Fee") of $35,125 for the first year of the agreement. However, ARA National retained unilateral right to increase the License Fee after the first year unconstrained by any conditions or restrictions under the License Agreement.

---

[1] Unless otherwise specified, all facts and procedural history contained in Debtor's Opposition To Motion To Compel Assumption Or Rejection Of License Agreement As An Executory Contract Under 11 U.S.C. § 365(d)(2) are incorporated in this Supplemental Brief by reference.

7. On information and belief, the Company obtained membership interest in ARA National by entering into the Licensing Agreement. Pursuant to the Close Corporation Agreement, the Company may not be divested of its membership interest absent a vote to oust the Company comprising of eighty (80%) percent of the remaining membership interest in ARA National.

8. Additionally, by its membership interest in ARA National, the Company is entitled to a *pro rata* share of the sale proceeds proportional to its interest should ARA National become the subject of a merger or acquisition transaction.

9. On August 1, 2011, ARA National, the Company, and Debtor executed an assignment and assumption agreement ("Assignment") under which the Debtor received all rights, claims and interests under the License Agreement. In essence, ARA National agreed to allow the Debtor to assume the position of the Company under the License Agreement, subject to all terms and conditions inuring to the benefit of the respective parties thereunder.

10. As part of the initial draw for entering into the License Agreement, ARA National represented that prospective increase in membership interest will lead to significant decrease in License Fees charged to each cost-sharing member-entity, such as the Debtor. Nonetheless, the exact opposite came to fruition – i.e. No new members were added and membership fees increased drastically since 2010.

C. DEBTOR'S FINANCIAL DIFFICULTY

11. Since the real estate market began to decline and the credit market dramatically tightened, the real estate market in Nevada has been extremely slow in recovery.

12. As a result of the deteriorated economic situation, and rapidly increasing License Fees, the Debtor, was unable to obtain the financing required to both continue its business operations and service the License Agreement.

13. The Debtor, through its managing members, began engaging its various lenders and ARA National to discuss potential resolutions of its financial shortfalls.

14.   The parties discussed various workout agreements under which Debtor would continue to participate in the ARA National network in exchange for a fee adjusted based, in part or in whole, upon the Debtor's actual revenue.

15.   As a result, a workout proposal was drafted under which ARA National agreed to forbear from taking any adverse actions against Debtor with respect to License Fee arrears, in exchange for an installment payment plan to make up for the arrears ("Forbearance Agreement").

16.   On or about January of 2012, Debtor and ARA National entered into the Forbearance Agreement.

17.   Since the parties entered into the Forbearance Agreement, the real estate and credit markets have not improved and, in fact, have become more difficult.

D.   **ARA NATIONAL'S BREACHES THE FORBEARANCE AGREEMENT**

18.   Since the parties entered into the Forbearance Agreement, ARA National has engaged in various conduct in direct contravention of the terms and spirit of the various agreements between the parties.

19.   To illustrate, in or about October 2013, certain voting principals of ARA National convened to discuss and vote the termination of Debtor's licensee rights and interests. Debtor neither received notice nor any opportunity to represent its position as a member entity of ARA National, except being informed that the termination would be subject to Debtor's acceptance of more onerous terms not included in the License Agreement.

20.   Thereafter, ARA National acted upon its intent to terminate the Debtor's licensee rights by shutting off the Debtor's email system and database access. Debtor regained access only after confronting various individuals ARA National regarding the impropriety of such conduct.

21.   Based on this history of violations and potential transactions[2] related to a proper valuation of the License Agreement, adequate cause exists for the Court to allow Debtor the full statutory period to determine the propriety of assuming or rejecting the License Agreement.

---

[2] Upon information and belief, Debtor has learned of recent negotiations regarding potential acquisition of ARA National by Newmark Grubb Knight Frank ("NGKF"), an international commercial real estate

## II. **LEGAL ARGUMENT**

Under § 365(d)(2), unless the bankruptcy court specifies a shorter time period, a chapter 11 debtor in possession "has until a reorganization plan is confirmed to decide whether to accept or reject an executory contract". 11 U.S.C. § 365(d)(2); N.L.R.B. v. Bildisco & Bildisco, 465 U.S. 513, 529, 104 S. Ct. 1188, 1198, 79 L. Ed. 2d 482 (1984). This temporal flexibility granted to Chapter 11 Debtors comports with the Code's overall effort to provide some flexibility and breathing space. See Theatre Holding Corp. v. Mauro, 681 F.2d 102, 105 (2nd Cir. 1982) (Congress considered and rejected proposed time limits under Section 365(d)(2)…permitting trustee or debtor in reorganization a reasonable time to decide whether to assume or reject); DJS Properties, L.P. v. Simplot, 397 B.R. 493, 498 (D. Idaho 2008) ([in fact] Sections 365(d)(2) and 1123(b)(2) arguably allows the bankruptcy court to approve a plan that provides for post-confirmation assumption or rejection of an executory contract). Cf. In re Sw. Aircraft Servs., Inc., 831 F.2d 848, 850 (9th Cir. 1987) (recounting legislative history evidencing intent to avoid the dilemma of extended vacancies faced by mall operators through the adoption of "Shopping Center Amendments" imposing fix time limit for assumption or rejection of such leases). A key consideration in determining what constitutes a reasonable time to assume or reject an executory contract or unexpired lease under Section 365(d)(2) is whether the debtor has had sufficient time to appraise its financial situation and the potential value of its assets in formulating a plan. In re Rebel Rents, Inc., 291 B.R. 520, 530 (Bankr. C.D. Cal. 2003) (citing Theatre Holding Corp., 681 F.2d at 105) (the "Mauro" factors).[3] Moreover, "the complexity of the case, the number of leases

---

service firm. Debtor's valuation of the License Agreement will undoubtedly require further discovery and assessment of the terms surrounding this potential acquisition.

[3] Although the focus of this Supplemental Brief centers on the litany of legal and factual issues surrounding the License Agreement, other "Mauro" factors going towards "reasonable time" for assuming or rejecting the License Agreement under Section 365(d)(2) also favor the Debtor. Critically, the License Agreement is essential to Debtor's business and reorganization because of the substantial goodwill generated by use of the ARA trademark and trade name over the years. Additionally, the exclusivity period does not expire until mid-May in the Debtor's case, and Debtor is not prohibited from seeking an extension of that period, if necessary, to resolve outstanding issues related to the value of the License Agreement. While ARA National has admittedly not received payment of License Fees since the Petition Date in this case, it will not suffer damages beyond compensation available under the Code given its ability to seek adequate protection. Consequently, these remaining factors, as more fully explained in Debtor's original Opposition, all favor denial of ARA National's present motion.

Page 5 of 7

that the debtor must evaluate, and the need for a judicial determination of whether a lease exists" are also relevant considerations in determining whether to compel assumption or rejection. In re Enron Corp., 279 B.R. 695, 703 (Bankr. S.D.N.Y. 2002) (citing In re Burger Boys, Inc., 94 F.3d 755, 760 (2nd Cir. 1996)). Where compelling a decision will result in significant harm to the Debtors and their creditors that outweighs the harm caused by the delay and the cost of litigating confirmation and § 365 issues, the Court should deny the motion to compel. See In re Hernandez, 287 B.R. 795, 806-07 (Bankr. D. Ariz. 2002).

Foremost, ARA National's Motion to Compel should be dismissed based on issues related to modifications and/or amendments to the payment terms contained in the License Agreement. Critically, various communications were exchanged following the parties' execution of the License Agreement regarding payment arrangements not specifically included in the License Agreement. Unless and until more clarity is obtained with respect to these terms, Debtor cannot intelligently reach a conclusion regarding the net value of the License Agreement *vis-à-vis* its prospective reorganization plan.

In addition to uncertainty regarding existing and prospective payment terms under the License Agreement, ARA National's past attempts to terminate the Debtor's membership interest raises issues regarding potential claims and offset that Debtor may assert the present case. As mentioned, throughout the history of performance under the License Agreement, ARA National has materially disrupted the Debtor's ability to perform its obligation under the agreement and deprived Debtor of its bargained-for benefits under the same. Particularly flagrant were ARA National's attempts to force termination of the License Agreement upon the Debtor, and actual termination of Debtor's access to ARA National's network and database services. This lack of access adversely affected Debtor's capacity to operate and arguably constitutes a breach of ARA National's obligations under the License Agreement. Given this history of past performances, an adequate evaluation of the value of the License Agreement necessarily entails considerations of potential claims for recovery by the Debtor for the benefit of the estate, as well as assessment of the parties' ability to honor the contractual obligation thereunder going forward.

Any prospective sale of ARA National generates additional uncertainty regarding the

value of the License Agreement on various levels. This uncertainty, at the outset, involves potential changes to the character of the Debtor's membership interest in ARA National, and thereby cost-sharing obligations owed to the parent entity. Moreover, to the extent there are no geographical limitations restricting future applicants for licenses, the prospect for competing licensees directly impacts Debtor's ability to generate revenue in support of its reorganization efforts. Without a more concrete grasp of the facts and circumstances surrounding this potential sale of ARA National, there are too many speculative factors affecting the value of the License Agreement that counsel against compelling a premature decision to assume or reject the agreement at present. Therefore, this Court should deny ARA National's present motion to compel.

### III. CONCLUSION

For the foregoing reasons, Debtor respectfully requests that the statutory deadline under 11 U.S.C. 365(d)(2) be applied to allow the Debtor up to and including the date of confirmation to assume or reject the License Agreement.

DATED this 7th day of April, 2014.

BLACK & LOBELLO

By: /s/YanXiong Li, Esq.
TISHA R. BLACK, ESQ.
Nevada State Bar No. 05876
S. DON BENNION, ESQ.
Nevada State Bar No.: 04530
YANXIONG LI, ESQ.
Nevada State Bar No.: 12807
10777 West Twain Avenue, Third Floor
Las Vegas, Nevada 89135
Telephone: (702) 869-8801
Facsimile: (702) 869-2669
tblack@blacklobellolaw.com
dbennion@blacklobellolaw.com
mli@blacklobellolaw.com

**BLACK & LOBELLO**  E-FILED APRIL 7th, 2014
TISHA R. BLACK, ESQ.
Nevada State Bar No.: 05876
S. DON BENNION, ESQ.
Nevada State Bar No.: 04530
YANXIONG LI, ESQ.
Nevada State Bar No.: 12807
10777 West Twain Avenue, Third Floor
Las Vegas, Nevada 89135
Telephone: (702) 869-8801
Facsimile: (702) 869-2669
tblack@blacklobellolaw.com
dbennion@blacklobellolaw.com
mli@blacklobellolaw.com

[Proposed] Attorneys for Debtor/Debtor-in-Possession,
ARA Nevada LLC

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

| | |
|---|---|
| In Re:<br><br>ARA Nevada, LLC, a Nevada limited liability company,<br><br>Debtor. | Case No.:  13-19693-led<br>Chapter 11<br><br>Hearing Date: April 8, 2014<br>Hearing Time: 10:30 AM |

**SUPPLEMENTAL DECLARATION OF CHRISTOPHER BENTLEY IN SUPPORT OF SUPPLEMENTAL BRIEF IN SUPPORT OF DEBTOR'S OPPOSITION TO MOTION TO COMPEL ASSUMPTION OR REJECTION OF LICENSE AGREEMENT AS AN EXECUTORY CONTRACT UNDER 11 U.S.C. § 365(d)(2)**

I, Christopher Bentley, declares as follows:

1. I am over the age of 18 years and am mentally competent. I have personal knowledge of the matters set forth in this Declaration and, if called upon to testify, could and would do so. I am a managing member of the above-captioned Debtor and Debtor-in-Possession ("Debtor").

2. I make this Declaration in support of the Debtor's Supplemental Brief in Support of Opposition to Motion to Compel Assumption or Rejection of License Agreement as an Executory Contract (the "Supplemental Brief"). I have reviewed the Supplemental Brief in its

entirety and can competently testify that all of the facts set forth in the Supplemental Brief are true and correct to the best of my knowledge.

3. Over several years, ARA Nevada, LLC ("Debtor" and collectively with its predecessor, the "Company") has established a strong reputation through providing performance-based real estate brokerage services to communities throughout Nevada.

4. Founded on the entrepreneurial spirit and hard work of Jodi Bentley and myself, the Company has established an excellent reputation as one of the premier real estate firms in Nevada.

5. Since its inception, the Company has developed a particular focus on the multi-family market. By 2008, after extensive branding efforts and various achievement awards, the Company rapidly expanded from 3 to 15 team members with complete suite of services to meet the demands of an increasing diverse portfolio of clientele, including leased investments, hospitality, industrial and land.

6. In short, the Company enjoyed significant success, with increasing market share year-over-year culminating in approximately $250,358,000 in sales volume for 2007.

7. On July 1, 2010, Apartment Realty Advisors, Inc. ("ARA National") arranged for the Company to obtain a license to use certain intellectual property as part of ARA National's expanding network of promotional and support system for facilitation of real estate transaction ("License Agreement").

8. Under the License Agreement, the Company agreed to tender a one-time initiation fee of $50,000 and annual license fee ("License Fee") of $35,125 for the first year of the agreement. However, ARA National retained unilateral right to increase the License Fee after the first year unconstrained by any conditions or restrictions under the License Agreement.

9. On information and belief, the Company obtained membership interest in ARA National by entering into the Licensing Agreement. Pursuant to the Close Corporation Agreement, the Company may not be divested of its membership interest absent a vote to oust the Company comprising of eighty (80%) percent of the remaining membership interest in ARA National.

10. Additionally, by its membership interest in ARA National, the Company is entitled to a *pro rata* share of the sale proceeds proportional to its interest should ARA National become the subject of a merger or acquisition transaction.

11. On August 1, 2011, ARA National, the Company, and ARA Nevada, LLC executed an assignment and assumption agreement ("Assignment") under which the ARA Nevada, LLC received all rights, claims and interests under the License Agreement. In essence, ARA National agreed to allow the ARA Nevada, LLC to assume the position of the Company under the License Agreement, subject to all terms and conditions inuring to the benefit of the respective parties thereunder.

12. As part of the initial draw for entering into the License Agreement, ARA National represented that prospective increase in membership interest will lead to significant decrease in License Fees charged to each cost-sharing member-entity, such as the Debtor. Nonetheless, the exact opposite came to fruition – i.e. No new members were added and membership fees increased drastically since 2010.

13. Since the real estate market began to decline and the credit market dramatically tightened, the real estate market in Nevada has been extremely slow in recovery.

14. As a result of the deteriorated economic situation, and rapidly increasing License Fees, the Debtor, was unable to obtain the financing required to both continue its business operations and service the License Agreement.

15. The ARA Nevada, LLC began engaging its various lenders and ARA National to discuss potential resolutions of its financial shortfalls.

16. We engaged ARA National to discuss various workout agreements under which ARA Nevada, LLC would continue to participate in the ARA National network in exchange for a fee adjusted based, in part or in whole, upon the Debtor's actual revenue.

17. As a result, a workout proposal was drafted under which ARA National agreed to forbear from taking any adverse actions against ARA Nevada, LLC with respect to License Fee arrears, in exchange for an installment payment plan to make up for the arrears ("Forbearance Agreement").

18. On or about January of 2012, ARA Nevada, LLC and ARA National entered into the Forbearance Agreement.

19. Since the parties entered into the Forbearance Agreement, the real estate and credit markets have not improved and, in fact, have become more difficult.

20. Since the parties entered into the Forbearance Agreement, ARA National has engaged in various conduct in direct contravention of the terms and spirit of the various agreements between the parties.

21. To illustrate, in or about October 2013, certain voting principals of ARA National convened to discuss and vote on the termination of Debtor's licensee rights and interests. ARA Nevada, LLC neither received notice nor any opportunity to represent its position as a member entity of ARA National, except being informed that the termination would be subject to Debtor's acceptance of more onerous terms not included in the License Agreement.

22. Thereafter, ARA National acted upon its intent to terminate the Debtor's licensee rights by shutting off the Debtor's email system and database access. ARA Nevada, LLC regained access only after confronting various individuals ARA National regarding the impropriety of such conduct.

23. I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on April 7, 2014, in Las Vegas, Nevada.

　　　　　　　　　　　　　　　　　　　　　　　　*/s/ Christopher Bentley*
　　　　　　　　　　　　　　　　　　　　　　　　Christopher Bentley